# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA

MARCO OHLIN and NATASHA PARACHA,

                Plaintiffs,

v.

DEFENDANT "1" a/k/a "SELINA" and JOHN
DOES 1-20, as yet unidentified Individuals,
Business Entities and/or Unincorporated
Associations,

                Defendants.

**CASE NO. 3:23 cv-08856**

## EMERGENCY MOTION FOR
## TEMPORARY RESTRAINING ORDER WITHOUT
## NOTICE AGAINST DEFENDANT "1" a/k/a
## "SELINA" AND JOHN DOES 1-20

       Pursuant to Federal Rule of Civil Procedure 65(b), Plaintiffs MARCO OHLIN

and NATASHA PARACHA, respectfully seek the entry of a Temporary Restraining

Order (TRO) against Defendant "1" a/k/a "SELINA" and her accomplices, JOHN

DOES 1-20.  The requested TRO aims to freeze the assets of Defendants, including

the Destination Addresses (as defined below), held by Defendant "1" or her cohorts

Defendants JOHN DOES 1-20, without prior notice to Defendants.

       In support, Plaintiffs allege as follows:

## FACTUAL BACKGROUND

Plaintiff MARCO OHLIN met Defendant "1" a/k/a "SELINA" who represented that she was a cryptocurrency investor who could help Plaintiff MARCO OHLIN earn money investing in cryptocurrency using her trading methods.[1] Relying on her misrepresentations, Plaintiff MARCO OHLIN, under the guidance of Defendant "1",  downloaded what he believed was a smartphone application owned and operated by a legitimate exchange called Members Exchange (MEMX).[2] Instead, however, Defendant "1" helped Plaintiff MARCO OHLIN download an application that Defendants created which was a copycat of the real MEMX smartphone application.  Thus, it appeared to Plaintiff MARCO OHLIN that he was provided with the legitimate cryptocurrency exchange owned and operated by Members Exchange – a legitimate U.S. exchange.[3]

At the direction of Defendant "1", Plaintiff MARCO OHLIN began transferring cryptocurrency he held on his Coinbase account to what he believed was the legitimate MEMX exchange.  The cloned copycat app was fraudulent and served as an engine of theft for Defendants, giving them a mechanism to provide Plaintiffs with false account statements that masked the fraudulent scheme Defendants were

---

[1] Docket Entry No. (DE") 3 [Amended Complaint] at ¶ 16.  *See also*, Declaration of MARCO OHLIN (Dated: May 24, 2023) [the "Ohlin Decl."], a copy of which is attached hereto as **Exhibit "A".**
[2] **Exhibit "A"** [Ohlin Decl.] at ¶ 4 (citing Amended Complaint at ¶¶ 18-19).
[3] *Id*. (citing Amended Complaint at ¶¶ 20-21).

perpetrating.[4]   In essence, the "MEMX" to which Plaintiffs were sending their cryptocurrency holdings was actually -- unbeknownst to Plaintiffs – Defendants' own private cryptocurrency wallet addresses.[5]

Through blockchain analytics tracing[6] the path of Plaintiffs' cryptocurrency assets, it has become apparent that Defendants have stolen all of Plaintiffs' assets; and those assets have been transferred to cryptocurrency accounts under Defendants' sole control.[7]

For example, Plaintiffs' stolen assets have been traced to the following cryptocurrency wallet addresses held primarily at cryptocurrency exchanges Binance and OKX -- wallet addresses believed to be owned or controlled by Defendants that were used to launder the digital assets stolen from Plaintiffs[8]:

---

[4] *Id.* (citing Amended Complaint at ¶¶ 20-23).

[5] *Id.* (citing Amended Complaint at ¶¶ 35, 37, 39)

[6] There are slight differences in the total amounts of the traced stolen cryptocurrency reported in the Amended Complaint when compared to this most recent tracing reported herein.  In the calculation process, it is common practice to round numbers for averaging purposes. Additionally, certain small transactions may go untraced due to their impractical flow. The difference observed on the USDT side is a result of rounding up, whereas the difference on the ETH side is attributed to the impractical flow of specific low-value transactions. Furthermore, it is important to consider the burnt ETH for gas, which can be likened to a transaction fee for fund transfers. Although this amount is typically minimal, it can still prevent an exact match between the initial and final amounts within the flow.

[7] *Id. See also*, Declaration of Justin Maile (Dated May 24, 2023) [the Maile Decl."], a copy of which is attached hereto as **Exhibit "B".**

[8] **Exhibit "B"** [Maile Decl.] at ¶¶ 8-10 (citing Amended Complaint at ¶¶ 34-41)

| # | EXCHANGE | DESTINATION ADDRESS | ASSET TYPE | ASSETS UNDER CLAIM (confirmed amount with blockchain data analysis, in cryptocurrency unit) |
|---|---|---|---|---|
| 1. | Binance | 1KAr47ZWdEmkLTPDjieF2mqHF7aJUoLEVD | BTC | 18.06583687 |
| | | | **TOTAL BTC** | **18.06583687** |
| 2. | Binance | 0x5a44717f1A7EDe7Ff3C5C6668B7d6cd84323634E | ETH | 19.110906 |
| 3. | Gemini | 0xD620c2Db204247c3C4db370999C90d7b1E5023A2 | ETH | 0.098604 |
| | | | **TOTAL ETH** | **19.20951** |
| 4. | OKX | 0xcA9B4a51C2ee3F65432f41ea71B6C693551B38F4 | USDT | 210000 |
| 5 | OKX | 0x1ce6880Ae94db5FBb5772EdA73A29c101F4D7D0d | USDT | 165025 |
| 6. | OKX | 0xE62462b570A34Cc19C59005289D193fb2fB6E3EA | USDT | 24139 |
| | | | **TOTAL USDT** | **399,164** |

Additionally, Plaintiffs' experts at Cipherblade have also traced Plaintiffs' stolen funds to and/or through the following cryptocurrency wallet addresses[9]:

| # | DESTINATION ADDRESS | ASSET TYPE | ASSETS UNDER CLAIM (confirmed amount with blockchain data analysis, in cryptocurrency unit) |
|---|---|---|---|
| 1 | 0x389505f098a29a994A3ed0e674f07cd451dde42C | ETH | 0.735681 |
| 2 | 0x000F422887eA7d370FF31173FD3B46c8F6 | ETH | 0.43432389 |

---

[9] *Id.*

| 6A5B1c | | |
|---|---|---|
| | **TOTAL ETH** | **1.17000489** |

As set forth in their Complaint, Defendants stole a significant amount of cryptocurrency totaling, at the time of the theft, approximately Eight Hundred Sixty-Two Thousand Three Hundred Eighteen Dollars and Seventy-Three Cents ($862,318.73).[10] Plaintiffs tracked the cryptocurrency primarily to Binance and OKX and two unidentified services.   Given these facts, Plaintiffs commenced this action and are entitled to a Temporary Restraining Order freezing Defendant "1" and/or the JOHN DOES 1-20 Defendants' assets – including the Destination Addresses maintained by Defendants – to preserve the *status quo ante* pending the outcome of this litigation.

## **LEGAL ARGUMENT**

### I. **Rule 65 Permits Entry of a Temporary Restraining Order Without Notice**

1.     Rule 65 permits this Court to enter a Temporary Restraining Order without notice to the adverse parties if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury . . . will result to the movant before the adverse party can be heard in opposition."[11] Further, the movant's counsel must certify in writing "any efforts made to give notice and the reasons why

---

[10] **Exhibit "A"** [Ohlin Decl.] at ¶ 4 (citing Amended Complaint at ¶ 1) and **Exhibit "B"** [Maile Decl.] at ¶¶ 8-10 (citing Amended Complaint at ¶ 41),

[11] Fed.R.Civ.P. 65(b)(1)(A).

it should not be required."[12]

2.    As to the first prong of Rule 65(b)(1), the declarations of Plaintiff MARCO OHLIN and Justin Meile, summarized and cited above and below, shows the likelihood of immediate and irreparable injury or loss.  Plaintiffs were clearly victimized and robbed by Defendant "1" and her assailants Defendants JOHN DOES 1-20; and the stone wall of obfuscation erected by the anonymous nature of cryptocurrency transactions significantly inhibits Plaintiffs' ability continue to trace his stolen funds or even identify Defendants by their proper legal names at this point.

3.    By freezing Defendants assets, Plaintiffs will have a foothold in their arduous climb to recovering their stolen cryptocurrency before Defendants can further transfer it beyond Plaintiffs' reach.[13]

4.    With regard to the second prong of Rule 65(b)(1), a TRO is warranted without notice to Defendants. Defendants' proper legal names, addresses and locations are unknown.  The only identifiable information Plaintiffs have about the Defendants are the Destination Addresses.  In a separate motion currently being prepared, Plaintiffs will seek leave to serve the Amended Complaint and Summons by alternative means -- by a non-fungible token ("NFT") – upon Defendants through

---

[12] Fed.R.Civ.P. 65(b)(1)(B). *See also*, *Sun Commodities, Inc. v. Miami Produce Int'l Imp. & Exp., Corp.*, 2008 U.S. Dist. LEXIS 85192 (S.D. Fla. Oct. 7, 2008).
[13] **Exhibit "B"** [Maile Decl.] at ¶ 11 ("Based upon my experience, if these assets are not frozen, it is very possible the individuals who stole these assets could move them to a foreign exchange or even worse, a cold wallet, which would prevent Plaintiffs from recovering their stolen cryptocurrency, causing significant, irreparable harm.")

the Destination Addresses where Plaintiffs' stolen cryptocurrency is being held.   At

that point, Defendants will be apprised of the charges brought against them in this

lawsuit so they may defend themselves against those charges, if they so choose.

5.      Furthermore, Plaintiffs certify a deep concern that with each passing

hour, Defendants will dissipate any traceable funds, either into untraceable

cryptocurrency accounts or to offshore entities organized in unknown locations.[14]

## II.   The Court Can Issue an Injunction to Freeze Assets in this Action for Equitable Relief

6.      Under the general rule, federal courts lack the authority to freeze assets

of a defendant before the claims have been brought to judgment. *See*, *Grupo*

*Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 322 (1999).

"However, when the plaintiff is seeking equitable relief, as opposed to merely legal

damages, the federal courts have the authority to issue a preliminary injunction in

order to freeze the assets of a defendant if the requirements for a preliminary

injunction are otherwise satisfied." *Clayton v. Heartland Resources, Inc*., 2008 WL

5046806, at *4 (W.D. Ky. Nov. 21, 2008) (citing *Grupo*, 527 U.S. at 324-325); *see*

*also*, *In re Focus Media, Inc*., 387 F.3d 1077, 1084 (9th Cir. 2004) (citations

omitted). In *Focus Media*, the Ninth Circuit specifically noted that the rule against

injunctive relief as articulated in *Grupo Mexicano* did not apply to the underlying

---

[14] *Id.*

claims for fraudulent conveyance and constructive trust, ultimately concluding that the trial court's entry of a preliminary injunction had been proper. *Id*. at 1085.

7.      Moreover, Rule 64 of the Federal Rules of Civil Procedure provides that when state law authorizes a prejudgment remedy to secure assets subject to a plaintiff's state law claims, state law governs such relief. Rule 64, Fed.R.Civ.P.; *Granny Goose Foods, Inc. v. Bhd. of Teamsters Local 70*, 415 U.S. 423, 436 n. 10 (1974).

8.      Here, Plaintiffs seek equitable relief in addition to his legal remedies and is entitled to an injunction to maintain the *status quo* until the claims in the Complaint can be resolved.  Amongst other claims and remedies sought, Plaintiffs allege common law torts (conversion and unjust enrichment) and requests relief in the following form of equity:

> the equitable imposition of a constructive trust over the property taken from Plaintiffs that is currently under the control of Defendant "1" and/or JOHN DOES 1-20, in the identified cryptocurrency wallet addresses held at Binance, OKX and two unidentified services; and [entry of an Order] that the wrongfully obtained property be returned to Plaintiffs.[15]

9.      Additionally, with regard to the claim for imposition of a constructive trust, Florida courts have authorized equitable injunctive relief to secure the assets subject to the claim. *Friedman v. Heart Institute of Port St. Lucie, Inc.*, 863 So.2d

---

[15] DE 3 [Amended Complaint] at ¶ 59.

189, 192 (Fla. 2003); *Briceño v. Bryden Investments, Ltd.*, 973 So.2d 614, 617 (Fla. 3d DCA 2008) (and cases cited therein).

10.    In disputes strikingly similar to the instant action, other courts have awarded the equitable relief sought by Plaintiffs here.  *See*, *Astrove v. John Doe*, Case No. 9:22-cv-80614, 2022 WL 2805315 (S.D. Fla. Apr. 21, 2022) (granting emergency motion for TRO without notice to John Doe defendant in case nearly identical to present matter involving stolen cryptocurrency which were traced to the crypocurrency exchange Binance); *Martinangeli v. Akerman, LLP*, Case No. 1:18-cv-23607-UU, 2018 WL 6308705 (S.D. Fla. Sept. 14, 2018) (entering TRO without notice to defendant whose assets were thereby frozen); *Heissenberg v. Doe*, Case No. 21-CV- 80716-ALTMAN/Brannon (S.D. Fla. April 23, 2021) at DE 14 (*same*); *Williams v. Doe*, Case No. 6:21- cv-03074-RK (W.D. Mo. Apr. 1, 2021) at DE 18 (*same*), copies of which are attached hereto as **Composite Exhibit "C"**.

11.    Accordingly, Plaintiffs are entitled to a Temporary Restraining Order if the other requirements for a Temporary Restraining Order have been met. For the reasons described below, Plaintiffs are entitled to such relief.

**III.   <u>A Temporary Restraining Order Is Appropriate to Prevent Immediate and Irreparable Harm</u>**

12.    In considering a Temporary Restraining Order, the Court must consider the following: (1) the likelihood of irreparable harm; (2) the unavailability of an adequate remedy at law; (3) the substantial likelihood of success on the merits; (4)

the threatened injury to the petitioner outweighs the possible harm to the respondent; and (5) a temporary injunction will not disserve the public interest. *City of Miami Beach v. Kuoni Destination Mgmt., Inc.*, 81 So. 3d 530, 532 (Fla. 3d DCA 2012); *see also Siegel v. LePore,* 234 F.3d 1163, 1179 (11th Cir. 2000), *cert. denied*, 531 U.S. 1005, 121 S. Ct. 510, 148 L. Ed. 2d 478 (2000) (citations omitted).

As shown below, Plaintiffs have satisfied each element of that standard.

## IV.   <u>Plaintiffs Have a Substantial Likelihood of Success on the Merits of Their Claims</u>

13.    The harms alleged in the Complaint, as well as the facts set forth in Plaintiff MARCO OHLIN's declaration, make clear that Plaintiffs were victimized by Defendants who -- through actual fraud, misappropriation, conversion, theft, or other questionable means -- obtained Plaintiffs' cryptocurrency, which in equity and good conscience Defendants should not be permitted to hold.

14.    Based on that fraudulent behavior, Plaintiffs has asserted claims for: (1) conversion, and (2) unjust enrichment.

15.    Moreover, any and all cryptocurrency assets held in the Destination Addresses to which Defendants transferred any portion of the funds stolen from Plaintiffs must be held in a constructive trust for Plaintiffs' benefit, as Defendants are not entitled to the benefit of wrongfully misappropriated, converted, and stolen cryptocurrency assets that were taken from Plaintiffs.

16.    Considering the foregoing, there is a high likelihood that Plaintiffs

will succeed on their claims.

17.     As for Plaintiffs' request that a constructive trust be applied, Florida law provides that a constructive trust is appropriately imposed as follows:

> [A] court of equity will raise a constructive trust and compel restoration where one through actual fraud, abuse of confidence reposed and accepted, or through other questionable means gains something for himself which equity and good conscience he should not be permitted to hold.

*Quinn v. Phipps*, 93 Fla. 803, 113 So. 419, 422 (Fla. 1930) (citations omitted). A constructive trust is "created by law to do equity under the circumstances without regard to intent." *Palmland Villas I Condo. Ass'n, Inc. v. Taylor*, 390 So.2d 123, 125 (Fla. 4th DCA 1980). A constructive trust is therefore appropriately established "to right a wrong committed and to prevent unjust enrichment of one person at the expense of another either as a result of fraud, undue influence, abuse of confidence or mistake in the transaction." *In re Fin. Federated Title and Trust, Inc.*, 347 F.3d 880, 891 (11th Cir. 2003) (applying Florida law).

18.     As such, success on the merits of Plaintiffs' common law claims is very likely.

## V.     Plaintiffs Will Suffer Irreparable Harm if Defendants Are Not Enjoined

19.     There is a significant risk that Defendants may dissipate the money stolen from Plaintiffs or simply transfer those funds into untraceable cryptocurrency

accounts or to offshore entities organized in unknown locations.[16]

20.    Considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze Defendants' assets, including those in the Destination Addresses, to maintain the *status quo* to avoid dissipation of the money illegally taken from Plaintiffs.

## VI.    There Is Little Prejudice to Defendants If the Temporary Restraining Order Is Entered

21.    While Plaintiffs would be severely prejudiced if Defendants dissipates the funds wrongfully taken from Plaintiffs, Defendants faces no such prejudice. An order forbidding Defendants from moving their assets will, at worst, delay Defendants from shifting their stolen funds to an untraceable cryptocurrency account; and at best, will help maintain the *status quo* for Plaintiffs to recover the valuable assets illegally obtained from Plaintiffs.

## VII.   Plaintiffs Have No Adequate Remedy at Law

22.    Plaintiffs' only remedy to recover the funds fraudulently taken from them is through their right to equitable relief in the form of enjoining asset dissipation by Defendants, beginning with imposition of a constructive trust to prevent the further dissipation of Plaintiffs' assets. A legal remedy for monetary relief alone will not adequately protect Plaintiffs' equitable ownership interest in those

---

[16] **Exhibit "B"** [Maile Decl.] at ¶ 11.

funds and assets that can disappear with the click of a computer mouse.

## VIII.   <u>Entering a Temporary Restraining Order Is In the Public Interest</u>

23.     The public interest strongly supports entry of a Temporary Restraining Order here.

24.     Moreover, entering a Temporary Restraining Order would actually serve the public interest by promoting the objectives of the Financial Crimes Enforcement Network [FinCEN] (a division of the U.S. Department of the Treasury) by providing assurance that courts will protect investors' assets from theft and will aid investors in their recovery of stolen assets when they can be readily located and traced to specific locations, like the stolen investor assets in this action.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs MARCO OHLIN and NATASHA PARACHA respectfully requests that this Court find Plaintiffs have satisfied the elements of their claims for preliminary injunctive relief and that the Court enter a Temporary Restraining Order without notice to Defendants, freezing their assets -- including the Destination Addresses to which Defendants transferred any portion of the funds stolen from Plaintiffs -- to preserve the *status quo ante* pending the full adjudication of Plaintiffs' claims.

Dated this 26th day of May, 2023.

Respectfully submitted,


By:  */s/Daniel J. Thornburgh*
**Daniel J. Thornburgh (BAR NO. 42661)**
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 E. Main Street
Pensacola, Florida 32502
dthornburgh@awkolaw.com
(850) 202-1010
*Counsel for Plaintiffs*