# EXHIBIT "C"

2022 WL 2805315
Only the Westlaw citation is currently available.
United States District Court, S.D. Florida.

Andrew ASTROVE, Plaintiff,

v.

John DOE, Defendant.

CASE NO. 22-CV-80614-RAR
|
Signed April 22, 2022

**Attorneys and Law Firms**

David Chad Silver, Jason Stuart Miller, Silver Miller, Coral Springs, FL, Eric F. Rosenberg, Pro Hac Vice, Silver Miller, Riverdale, MD, for Plaintiff.

**ORDER GRANTING PLAINTIFF'S *EX PARTE* EMERGENCY MOTION FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND SETTING HEARING ON MOTION FOR PRELIMINARY INJUNCTION**

RODOLFO A. RUIZ II, UNITED STATES DISTRICT JUDGE

**\*1** **THIS CAUSE** comes before the Court on Plaintiff's Emergency Motion for Temporary Restraining Order Without Notice against Defendant JOHN DOE [ECF No. 3] ("Motion"). As explained below, after careful review of the Motion and Plaintiff's Declaration [ECF No. 3-1], Plaintiff has satisfied the requirements for the issuance of a temporary restraining order.

**BACKGROUND**

Under Defendant's guidance, Plaintiff opened a cryptocurrency account at U.S.-based cryptocurrency exchange Coinbase, which Plaintiff funded with monies that were used to purchase cryptocurrency that was subsequently transferred to what Plaintiff believed was another cryptocurrency exchange, "MINE DIGITAL." Plaintiff funded his Coinbase account with approximately One Million Four Hundred Thousand Dollars ($1,400,000.00); used those funds to purchase Tether [1], and then sent those Tether to an investment account allegedly created for Plaintiff that was overseen by Defendant JOHN DOE.

According to Defendant, the external investment account into which Plaintiff's Tether was being deposited was maintained at Australian cryptocurrency exchange Mine Digital. Defendant provided Plaintiff Mine Digital's purported exchange website URL as: "MCWLEX.xyz" and instructed Plaintiff to set up his cryptocurrency account there. As Plaintiff later learned, the correct website URL for Mine Digital is "minedigital.exchange," not "MCWLEX.xyz."

Evidence in the record suggests Defendant cloned the real Mine Digital website so that his cloned copy would appear to be a legitimate cryptocurrency exchange. The cloned site to which Defendant directed Plaintiff was not legitimate, though; it served as an engine of theft for Defendant, providing him a mechanism to proffer Plaintiff false account statements and real-time values of cryptocurrency markets on legitimate exchanges that masked the fraudulent scheme Defendant was perpetrating upon Plaintiff. In essence, the "Mine Digital account" to which Plaintiff was sending his cryptocurrency holdings was actually — unbeknownst to Plaintiff — Defendant's own private cryptocurrency address.

Through blockchain analytics tracing the path of Plaintiff's cryptocurrency assets, it has become apparent that Defendant has stolen all of Plaintiff's assets; and those assets have been transferred to cryptocurrency accounts under Defendant's sole control or have been liquidated into fiat currency and dissipated by Defendant.

**\*2** For example, Plaintiff's stolen assets have been traced to the following cryptocurrency wallet addresses at cryptocurrency exchanges FTX, KRAKEN, OKX (OKEx), BINANCE, GATE.IO, and ZB.COM — wallet addresses which are believed to be owned or controlled by Defendant or an unknown third-party to whom he has transferred those stolen assets, and which have been used to launder the assets stolen from Plaintiff:

| # | EXCHANGE | DESTINATION ADDRESS | ASSET TYPE | ASSETS UNDER CLAIM (average confirmed with five separate tracing methodologies; in cryptocurrency unit) |
|---|---|---|---|---|

| # | | | | | |
|---|---|---|---|---|---|
| 1. | FTX | e9d3aa47497e63d27916ec0947174e2f778581bb | USDT | 380,056.73823 USDT |
| 2. | Kraken | 57ae39494b91f947866b86d9655c0e7fdc093f14 | USDT | 169,304.42112 USDT |
| 3. | Bitfinex.com/Crypto.com | 4dcd2459bb78d7a645aa7e196857d421b10d9bf5 | USDT | 83,401.620357 USDT |
| 4. | OKX (OKEx) | 39243d72d9c26d26bd8317838908e7f2682af284 | USDT | 80,060.512581 USDT |
| 5. | Binance | 70fc0e221578f6d47f958cfa2bff1f9320bc6eec | USDT | 60,978.520990 USDT |
| 6. | FTX | ccfaedbcfe19f10607ce7f9b0d64295d979b606d | USDT | 38,726.667998 USDT |
| 7. | gate.io | 49b8229ddd86b47e6ebab43bd54b71e80aff3a0f | USDT | 18,910.227524 USDT |
| 8. | ZB.com | 15df4ca7b60d09f0070e4c42ef08031c73167686 | USDT | 5,908.5983 USDT |
| | | | TOTAL | **837,347.3072 USDT** |

In addition to the foregoing, as of the date of this filing, blockchain analytics have traced Plaintiff's stolen funds to and/or through the following cryptocurrency wallet addresses (among others), which are believed to be owned or controlled by Defendant or an unknown third-party to whom he has transferred those stolen assets, and which are believed to still be holding some of the assets stolen from Plaintiff:

| # | DESTINATION ADDRESS | ASSET TYPE | ASSETS UNDER CLAIM (average confirmed with five separate tracing methodologies; in cryptocurrency unit) |
|---|---|---|---|
| 4317 | 58befb274b88599401a1d7445dcb50c71122 | USDT | 11,721.149170 USDT |
| e7b2 | 36e1a636d31aa3d2e8918f80fecdb41f8cd6d | USDT | 7,704.7557322 USDT |
| e08e | 2b4c9f7d58a05b4a16b71ef8afb42557aef2 | USDT | 5,980.596504 USDT |
| 7b64 | 40d7a60f3b14f721195c0d289807e9dde9559 | USDT | 2,444.308878 USDT |
| | | TOTAL | **27,850.81028 USDT** |

As a result of the foregoing scheme, Plaintiff has lost approximately One Million Four Hundred Thousand Dollars ($1,400,000.00) and is left trying to get answers to help him uncover where his funds are or where they went after they were stolen by JOHN DOE.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 65, a Court may grant a temporary restraining order *ex parte.* As required by the Rule, specific facts in the form of an affidavit or Verified Complaint must demonstrate an "immediate and irreparable injury, loss, or damage will result to movant before the adverse party can be heard in opposition," and the attorney for the movant must certify in writing any efforts made to provide notice to the adverse party. *See* Fed. R. Civ. P. 65(b)(1). Any Order issued without notice to the adverse party must state "the date and hour it was issued; describe the injury and state why it is irreparable; state why the Order was issued without notice and be promptly filed in the Clerk's Office and entered in the record. The Order expires at a time after entry — not to exceed fourteen (14) days." *Id.* at (b)(2).

To obtain a temporary restraining order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief

is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest."

⚑ *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."

⚑ *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974).

## ANALYSIS

Plaintiff has shown a strong likelihood of success on the merits of his claims against Defendant JOHN DOE for: (1) fraudulent inducement, (2) negligent misrepresentation, (3) replevin, (4) conversion, and (5) unjust enrichment as well as for imposition of a constructive trust and disgorgement of funds held by JOHN DOE in the aforementioned Destination Addresses to which JOHN DOE transferred any portion of the funds purportedly stolen from Plaintiff. Specifically, in light of the foregoing facts, Plaintiff is entitled to a temporary restraining order freezing Defendant JOHN DOE's assets — including the Destination Addresses maintained by Defendant JOHN DOE, for him, or by any entity under his control — to preserve the *status quo ante* pending the outcome of this litigation.

**\*3** The cryptocurrency assets at issue are specific, identifiable property and can be traced in JOHN DOE's assets in the Destination Addresses or elsewhere. Plaintiff has established in his Motion and the Declaration in support thereof that Plaintiff's rights will be immediately and irreparably harmed absent a temporary restraining order from this Court. Without entry of the temporary restraining order, Plaintiff may be unable to recover for his equitable claims.

Moreover, considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze the Destination Addresses to maintain the *status quo* to avoid dissipation of the money illegally taken from Plaintiff. Plaintiff was victimized by the theft of his cryptocurrency assets, and it appears from the record that JOHN DOE has no right to claim either possession or ownership of Plaintiff's stolen assets.

Therefore, there is a high likelihood Plaintiff will succeed on his claims.

The balance of hardships also favors Plaintiff because a temporary restraining order would preserve the *status quo ante* and prevent irreparable harm until such time as the Court may hold a hearing. Entry of a temporary restraining order will also not harm the public interest, which is properly served by promoting the objectives of the Financial Crimes Enforcement Network [FinCEN] (a division of the U.S. Department of the Treasury) and providing assurance that courts will protect investors' assets from theft and will aid investors in their recovery of stolen assets when they can be readily located and traced to specific locations, like the purloined assets in this action.

Lastly, because of the apparent strength of Plaintiff's case, the Court concludes that Plaintiff need only provide a modest amount of security pursuant to Fed. R. Civ. P. 65(c) at this time.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion [ECF No. 3] is **GRANTED**. A temporary restraining order is entered as follows:

1. Defendant JOHN DOE and his agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which he/they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby temporarily restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of Defendant JOHN DOE or any business entity through which he acts or which acts in active concert or participation with him; including but not limited to those assets currently held in: (1) the Destination Addresses; (2) any account at any other financial institution, bank, trading exchange, or investment firm; and (3) any cryptocurrency wallet or cryptocurrency trading account they maintain or control anywhere other than in the Destination Addresses.

2. Notice was not provided to Defendant JOHN DOE prior to entry of this Order because his identity is presently unknown

to Plaintiff. The Court will separately consider a request from Plaintiff to engage in expedited discovery through which Plaintiff intends to obtain from the recipient cryptocurrency exchanges listed above Defendant JOHN DOE's identity, including a physical and/or electronic address at which Defendant JOHN DOE can be contacted about the claims asserted against him in this lawsuit.

**\*4** 3. Pursuant to Fed. R. Civ. P. 65(c), which requires that security must typically be posted by Plaintiff, the Court has determined that One Thousand Dollars ($1,000.00) is adequate to pay the costs and damages, if any, sustained by any party found to have been wrongfully enjoined or restrained by this Order. Therefore, pursuant to Fed. R. Civ. P. 65, Plaintiff shall — within ten (10) calendar days of this Order — post a bond in the amount of One Thousand Dollars ($1,000.00) to secure this Order. In lieu of a bond, Plaintiff may post cash or its equivalent with the Clerk of Court.

4. Upon a showing of good cause by any party-of-interest, the Court may enter a further order amending the amount of Plaintiff's bond requirement as a means of providing a source of funds to which Defendant JOHN DOE may be entitled for a wrongful injunction or restraint.

5. **A telephonic hearing is set before this Court on Tuesday, May 3, 2022, at 10:00 A.M., at which time Defendant and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on Plaintiff's requested preliminary injunction. The parties are instructed to call 1-877-402-9753 by no later than 9:55 A.M. The access code is 9372453 and the password is 0918. The Court requires that the Parties appear via a landline if possible (i.e. not a cellular phone or a speaker phone) for clarity.**

6. Defendant JOHN DOE shall file with the Court and serve on Plaintiff's counsel any answering affidavits, pleadings, motions, expert reports or declarations and/or legal memoranda no later than five (5) days prior to the hearing for preliminary injunction.

7. If Defendant JOHN DOE timely files with the Court any papers opposing entry of a preliminary injunction, Plaintiff may file with the Court responsive or supplemental pleadings, materials, affidavits, or memoranda and shall serve same on Defendant JOHN DOE or his counsel-of-record no later than two (2) days prior to the preliminary injunction hearing.

8. Defendant JOHN DOE is hereby on notice that failure to timely serve and file his opposition, or failure to appear at the hearing, may result in the imposition of a preliminary injunction against him pursuant to Fed. R. Civ. P. 65.

9. This Temporary Restraining Order will expire fourteen (14) days from its entry in accordance with Fed. R. Civ. P. 65(b) (2) unless, for good cause shown, this Order is extended or Defendant JOHN DOE consents that it should be extended for a longer period of time. However, the Court may, upon demonstration of good cause by any party-of-interest, shorten or lift this Order.

10. As soon as is practical upon learning from the Recipient Cryptocurrency Exchanges Defendant JOHN DOE's true identity and obtaining his contact information, Plaintiff shall forthwith serve a copy of the Complaint, Motion, and this Order on Defendant JOHN DOE by U.S. First Class Mail, overnight delivery, facsimile, electronic mail, or personally by agents or employees of Plaintiff, by private process server, upon any person or entity that may have possession or control of any property, property right, funds, or asset that may be subject to any provision of this Order.

11. The above dates may be revised upon stipulation by all parties and approval of this Court.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 22nd day of April, 2022.

**All Citations**

Slip Copy, 2022 WL 2805315

---

## Footnotes

1    Tether (often abbreviated with the symbol "USDT") is a cryptocurrency hosted on the Ethereum and Bitcoin blockchains. It is categorized as a "stablecoin," because it was originally designed so that each coin would

always be worth One Dollar ($1.00 USD). Thus, one USDT is worth roughly $1.00; and 1,400,000 USDT are worth roughly $1,400,000.00. Tether has one of the largest market caps, and is one of the most widely-circulated cryptocurrencies, in the world.

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:23-cv-08856-TKW-HTC   Document 5-3   Filed 05/26/23   Page 7 of 28

Martinangeli v. Akerman, LLP, Not Reported in Fed. Supp. (2018)

2018 WL 6308705
Only the Westlaw citation is currently available.
United States District Court, S.D. Florida.

Carlos MARTINANGELI, an individual, Plaintiff,
v.

AKERMAN, LLP, a Florida limited liability
partnership; Evan Kaufman, an individual; Edward
Lovette, an individual; Point 144 Venture Capital,
a foreign company; and Bank of America, N.A.,
a national banking association, Defendants.

Case No. 1:18-cv-23607-UU
|
Signed 09/14/2018

**Attorneys and Law Firms**

Jason Stuart Miller, David Chad Silver, Silver Miller, Coral
Springs, FL, for Plaintiff.

Scott W. Atherton, Terence Michael Mullen, Atherton
McAuliffe & Reeder PA, West Palm Beach, FL, for Defendant
Law Firm Akerman LLP Akerman LLP 98 SE Seventh Street
Suite 1100 Miami, FL 33131 (305) 374-5600.

D. David Keller, Elizabeth Ann Izquierdo, Keller Landsberg
PA, Fort Lauderdale, FL, for Defendant Evan Kaufman.

Marc Thomas Parrino, Liebler Gonzalez & Portuondo, P.A.,
Miami, FL, for Defendant Bank of America, N.A.

**ORDER GRANTING TEMPORARY
RESTRAINING ORDER**

URSULA UNGARO, UNITED STATES DISTRICT JUDGE

**\*1** This matter is before the Court on Plaintiff's Emergency
Motion for Temporary Restraining Order Without Notice
Against Defendant EDWARD LOVETTE (the "Motion").
D.E. 7. Under Federal Rule of Civil Procedure 65, a Court
may grant a Temporary Restraining Order *ex parte.* Fed. R.
Civ. P. 65. As required by the Rule, specific facts in the
form of an affidavit or Verified Complaint must demonstrate
an "immediate and irreparable injury, loss, or damage will

result to movant before the adverse party can be heard in
opposition," and the attorney for the movant must certify in
writing any efforts made to provide notice to the adverse
party. *See,* Fed.R.Civ.P. 65(b)(1)(A). Pursuant to the Rule, any
Order issued without notice to the adverse party must state:

> the date and hour it was issued;
> describe the injury and state why it is
> irreparable; state why the order was
> issued without notice; and be promptly
> filed in the clerk's office and entered
> in the record. The order expires at
> the time after entry—not to exceed 14
> days ....

*Id.* at (b)(2). In evaluating the Motion, this Court has
considered the following factors: (1) whether the movant has
a strong likelihood of success on the merits of its claims; (2)
whether the movant would suffer irreparable injury absent a
restraining order; (3) whether granting the restraining order to
the movant outweighs the possible harm to the non-movants;
(4) whether the movant has available to it an adequate remedy
at law; and (5) whether the public interest would be served
by granting the restraining order. *See* 🏴 *Siegel v. LePore,*
234 F.3d 1163, 1176 (11th Cir. 2000). Having reviewed the
Motion, the record, and being otherwise sufficiently advised
in the premises, the Court hereby finds as follows:

1. Plaintiff has shown a strong likelihood of success on the
merits of his claims against Defendant EDWARD LOVETTE
for fraudulent inducement and negligent misrepresentation as
well as for imposition of a constructive trust and disgorgement
of funds held in bank accounts maintained by, or for,
Defendant EDWARD LOVETTE.

2. Specifically, over the course of multiple December 2017 -
February 2018 wire transfers from Plaintiff's Citibank bank
account to the BANK OF AMERICA, N.A. bank account
believed to be managed by Defendant EDWARD LOVETTE
and his business entities, Plaintiff transferred to Defendant
EDWARD LOVETTE and his business entities a sum of $
1,310,000.00 thusly: [1]

| DATE OF WIRE TRANSFER | BANK OF AMERICA ACCOUNT TO WHICH FUNDS WERE WIRED | PAYEE | AMOUNT TRANSFERRE |
|---|---|---|---|

Case 3:23-cv-08856-TKW-HTC  Document 5-3  Filed 05/26/23  Page 8 of 28

Martinangeli v. Akerman, LLP, Not Reported in Fed. Supp. (2018)

| December 11, 2017 | * * *1665 (the"* * * 1665 Account") | Blockchain Technologies Corporation | $850,000.00 |
| December 11, 2017 | * * *1665 | Blockchain Technologies Corporation | $150,000.00 |
| December 12, 2017 | * * *1665 | Blockchain Technologies Corporation | $100,000.00 |
| December 29, 2017 | * * *1665 | Blockchain Technologie Corporation | $200,000.00 |
| February 14, 2018 | * * *1665 | Blockchain Technologies Corporation | $10,000.00 |
| | | TOTAL | $1,310,000.00 |

3. The Court finds the Declaration of Nikolaos Spanos [2] persuasive. Specifically, as stated under penalty of perjury by Nikolaos Spanos, the owner of Blockchain Technologies Corporation:

- Point 144 Venture Capital is not a subsidiary of Blockchain Technologies Corporation, nor has it ever been.

- Neither Edward Lovette, nor any of his business entities have any business association with Blockchain Technologies Corporation. [3]

- The Bank of America account reflected on the wire transfer instructions provided to Plaintiff purports to be an account maintained by Blockchain Technologies Corporation. However, the account listed on the wire transfer instructions is not an account of Blockchain Technologies Corporation. [4]

- **\*2** • If anyone wire transferred funds in compliance with the instructions provided to Plaintiff, Blockchain Technologies Corporation did not receive any such funds. [5]

- Anyone induced into wire transferring money to the account shown in the wire transfer instructions provided to Plaintiff, believing that account is an account maintained by Blockchain Technologies Corporation,

was fraudulently induced into making any such monetary transfer. [6]

4. Plaintiff has established in his Motion and the Declarations in support thereof that Plaintiff's rights will be immediately and irreparably harmed absent a Temporary Restraining Order from this Court because Defendant has already closed the Bank of America account to which Plaintiff transferred funds and emptied the account, as evidenced by Plaintiff's supplemental notice. D.E. 11. Without entry of the Temporary Restraining Order, Plaintiff may be unable to recover for his equitable claims.

5. The September 14, 2018 supplemental filing submitted by Plaintiff [7] further demonstrates that Defendant BANK OF AMERICA, N.A. has concluded that the * * *1665 Account "has been closed and has no balance" and has identified certain additional accounts with "nominal balances" related to Defendant EDWARD LOVETTE and his entities that, pending the resolution of the Motion, have already been temporarily frozen by the bank.

6. The balance of hardships also favors Plaintiff, because a Temporary Restraining Order would preserve the *status quo ante* and prevent irreparable harm until such time as the Court may hold a hearing. *See S.E.C. v. ETS Payphones, Inc.*, 408 F.3d 727, 734 (11th Cir. 2005) (affirming district court's pre-judgment freezing of assets via preliminary injunction where Plaintiff sought equitable remedy to preserve the status quo).

Case 3:23-cv-08856-TKW-HTC Document 5-3 Filed 05/26/23 Page 9 of 28

Martinangeli v. Akerman, LLP, Not Reported in Fed. Supp. (2018)

7. Entry of a Temporary Restraining Order is in the public interest, which is properly served by promoting the objectives of the Financial Crimes Enforcement Network ("FinCEN") (a division of the U.S. Department of the Treasury) and providing assurance that courts will protect investors' assets from theft and will aid investors in their recovery of stolen assets when they can be readily located and traced to specific locations, like the purloined investor assets in this action.

Accordingly, IT IS HEREBY ORDERED AND ADJUDGED that:

### TEMPORARY RESTRAINING ORDER

1. Plaintiff's Motion for Temporary Restraining Order against Defendant EDWARD LOVETTE, D.E. 7, is GRANTED.

2. Defendant EDWARD LOVETTE and his agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which he/they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby temporarily restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of Defendant EDWARD LOVETTE or any business entity through which he acts or which acts in active concert or participation with him; including but not limited to those assets currently held in: (1) any account at BANK OF AMERICA, N.A. or any of its subsidiaries or affiliates, (2) any account at any other financial institution, bank, trading exchange, or investment firm; and (3) any cryptocurrency wallet or cryptocurrency trading account they maintain or control.

### BOND TO BE POSTED

**\*3** 3. Pursuant to Fed.R.Civ.P. 65(c), requiring that security be posted by Plaintiff, Plaintiff shall post a bond in the amount of Ten thousand dollars, as payment of damages to which Defendant EDWARD LOVETTE may be entitled for a wrongful injunction or restraint.

4. Upon a showing of good cause by Plaintiff, the Court may enter a further order reducing the amount of, or waiving in its entirety, Plaintiff's bond requirement.

### DURATION OF TEMPORARY RESTRAINING ORDER

5. The Temporary Restraining Order will expire fourteen (14) days from its entry in accordance with Fed.R.Civ.P. 65(b) (2) unless, for good cause shown, this Order is extended or Defendant EDWARD LOVETTE consents that it should be extended for a longer period of time. However, the Court may, upon demonstration of good cause by Defendant EDWARD LOVETTE, shorten or lift this Order.

### SERVICE OF THIS ORDER AND RELATED FILINGS

6. Plaintiff shall forthwith serve a copy of the Complaint, Motion, and this Order on Defendant EDWARD LOVETTE by U.S. First Class Mail, overnight delivery, facsimile, electronic mail, or personally by agents or employees of Plaintiff, by private process server, upon any person or entity that may have possession or control of any property, property right, funds, or asset that may be subject to any provision of this Order.

7. The above dates may be revised upon stipulation by all parties and approval of this Court.

DONE and ORDERED in Chambers in Miami, Miami-Dade County, Florida, this 14th day of September 2018 at 2:30 p.m. EST.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 6308705

### Footnotes

Case 3:23-cv-08856-TKW-HTC   Document 5-3   Filed 05/26/23   Page 10 of 28

Martinangeli v. Akerman, LLP, Not Reported in Fed. Supp. (2018)

1       *See*, DE 7-1 (September 13, 2018 Declaration of Carlos Martinangeli) at ¶ 7.

2       *See*, DE 7-2 (August 23, 2018 Declaration of Nikolaos Spanos) at ¶ 2.

3       *Id.* at ¶ 3.

4       *Id.* at ¶ 5.

5       *Id.* at ¶ 7.

6       *Id.* at ¶ 8.

7       DE 11.

---

**End of Document**                                      © 2023 Thomson Reuters. No claim to original U.S. Government Works.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 21-CIV-80716-ALTMAN/Brannon

**TULLIA HEISSENBERG**,

    *Plaintiff*,

*v.*

**JOHN DOE**;

    *Defendant*.

_____/

## ORDER GRANTING *EX PARTE* EMERGENCY MOTION FOR ENTRY OF TEMPORARY RESTRAINING ORDER

The Plaintiff has filed an Emergency Motion for Temporary Restraining Order Without Notice against Defendant JOHN DOE (the "Motion") [ECF No. 7]. The Court held a hearing on the Motion on April 22, 2021. The Court has carefully reviewed the Application and the record and is otherwise fully advised of the matter.

By the instant Application, the Plaintiff Tullia Heissenberg (the "Plaintiff") moves *ex parte* for entry of a temporary restraining order against the Defendant and an entry of an order restraining the financial accounts owned or controlled by JOHN DOE as identified in this Order, under Fed. R. Civ. P. 65.

For the reasons set forth herein, Plaintiff's Renewed *Ex Parte* Emergency Motion for Temporary Restraining Order [ECF No. 7] is **GRANTED**.

### FACTUAL BACKGROUND[1]

The Plaintiff is a retired senior citizen who, at one time, possessed approximately $4.4 million in cryptocurrency. *See* Compl. [ECF No. 1] ¶ 1. Through a process called "SIM swapping" (or "SIM

---

[1] The factual background is taken from the Plaintiff's Complaint [ECF No. 1], Renewed Application for Temporary Restraining Order [ECF No. 7], and supporting Declarations submitted by the Plaintiff [ECF Nos. 7-1, 13].

hijacking") the Defendant JOHN DOE accessed the Plaintiff's account on the cryptocurrency exchange BlockFi and, without her knowledge or authorization, withdrew her holdings. *See id.* ¶¶ 48–49.

Specifically, commencing on or about March 1, 2021 at 20:01 UTC, JOHN DOE withdrew the Plaintiff's cryptocurrency assets (listed below) from her BlockFi account— all without her knowledge or authorization. *See id.* ¶ 49. JOHN DOE deposited those assets into two cryptocurrency wallets owned or controlled by or for JOHN DOE: bc1qdjkc4e3u8jup6axtda560z720vapq5p34pmwgu (the "JOHN DOE BTC Wallet") and 0xC51f0cbf92030F50829B244f8D876d5843b8A955 (the "JOHN DOE ETH Wallet") (collectively, the "JOHN DOE Wallet Addresses"):

| # | Transfer Date (UTC) | Asset sent to JOHN DOE Wallet Address or Fee Charged | JOHN DOE Wallet Address |
|---|---|---|---|
| 1 | 2021-03-01 20:01:47Z | 4.9975 BTC | bc1qdjkc4e3u8jup6axtda560z720vapq5p34pmwgu |
| 2 | 2021-03-01 20:01:47Z | 0.0025 BTC Withdrawal Fee | |
| 3 | 2021-03-01 20:01:52Z | 99.9985 ETH | 0xC51f0cbf92030F50829B244f8D876d5843b8A955 |
| 4 | 2021-03-01 20:01:52Z | 0.0015 ETH Withdrawal Fee | |
| 5 | 2021-03-01 20:01:54Z | 99.9985 ETH | 0xC51f0cbf92030F50829B244f8D876d5843b8A955 |
| 6 | 2021-03-01 20:01:54Z | 0.0015 ETH Withdrawal Fee | |
| 7 | 2021-03-01 20:01:56Z | 99.9985 ETH | 0xC51f0cbf92030F50829B244f8D876d5843b8A955 |
| 8 | 2021-03-01 20:01:56Z | 0.0015 ETH Withdrawal Fee | |
| 9 | 2021-03-01 20:01:59Z | 99.9985 ETH | 0xC51f0cbf92030F50829B244f8D876d5843b8A955 |

| 10 | 2021-03-01 20:01:59Z | 0.0015 ETH Withdrawal Fee | |
|----|----------------------|----------------------------|---|
| 11 | 2021-03-01 20:02:01Z | 99.9985 ETH | 0xC51f0cbf92030F50829B244 f8D876d5843b8A955 |
| 12 | 2021-03-01 20:02:01Z | 0.0015 ETH Withdrawal Fee | |
| 13 | 2021-03-01 20:02:04Z | 99.9985 ETH | 0xC51f0cbf92030F50829B244 f8D876d5843b8A955 |
| 14 | 2021-03-01 20:02:04Z | 0.0015 ETH Withdrawal Fee | |
| 15 | 2021-03-01 20:02:16Z | 99.9985 ETH | 0xC51f0cbf92030F50829B244 f8D876d5843b8A955 |
| 16 | 2021-03-01 20:02:16Z | 0.0015 ETH Withdrawal Fee | |
| 17 | 2021-03-01 20:02:18Z | 99.9985 ETH | 0xC51f0cbf92030F50829B244 f8D876d5843b8A955 |
| 18 | 2021-03-01 20:02:18Z | 0.0015 ETH Withdrawal Fee | |
| 19 | 2021-03-01 20:02:45Z | 4.9975 BTC | bc1qdjkc4e3u8jup6axtda560z 720vapq5p34pmwgu |
| 20 | 2021-03-01 20:02:45Z | 0.0025 BTC Withdrawal Fee | |
| 21 | 2021-03-01 20:03:06Z | 4.9975 BTC | bc1qdjkc4e3u8jup6axtda560z 720vapq5p34pmwgu |
| 22 | 2021-03-01 20:03:06Z | 0.0025 BTC Withdrawal Fee | |
| 23 | 2021-03-01 20:03:32Z | 49.9985 ETH | 0xC51f0cbf92030F50829B244 f8D876d5843b8A955 |
| 24 | 2021-03-01 20:03:32Z | 0.0015 ETH Withdrawal Fee | |
| 25 | 2021-03-01 20:03:39Z | 49.9985 ETH | 0xC51f0cbf92030F50829B244 f8D876d5843b8A955 |
| 26 | 2021-03-01 20:03:39Z | 0.0015 ETH Withdrawal Fee | |
| 27 | 2021-03-01 20:03:43Z | 49.9985 ETH | 0xC51f0cbf92030F50829B244 f8D876d5843b8A955 |
| 28 | 2021-03-01 20:03:43Z | 0.0015 ETH Withdrawal Fee | |

| 29 | 2021-03-01 20:03:45Z | 49.9985 ETH | 0xC51f0cbf92030F50829B244 f8D876d5843b8A955 |
|----|----------------------|-------------|---------------------------------------------|
| 30 | 2021-03-01 20:03:45Z | 0.0015 ETH Withdrawal Fee | |
| 31 | 2021-03-01 20:03:47Z | 49.9985 ETH | 0xC51f0cbf92030F50829B244 f8D876d5843b8A955 |
| 32 | 2021-03-01 20:03:47Z | 0.0015 ETH Withdrawal Fee | |
| 33 | 2021-03-01 20:03:49Z | 49.9985 ETH | 0xC51f0cbf92030F50829B244 f8D876d5843b8A955 |
| 34 | 2021-03-01 20:03:49Z | 0.0015 ETH Withdrawal Fee | |
| 35 | 2021-03-01 20:04:16Z | 5 BTC | bc1qdjkc4e3u8jup6axtda560z 720vapq5p34pmwgu |
| 36 | 2021-03-01 20:05:08Z | 4.9975 BTC | bc1qdjkc4e3u8jup6axtda560z 720vapq5p34pmwgu |
| 37 | 2021-03-01 20:05:08Z | 0.0025 BTC Withdrawal Fee | |
| 38 | 2021-03-01 20:40:19Z | 2.9975 BTC | bc1qdjkc4e3u8jup6axtda560z 720vapq5p34pmwgu |
| 39 | 2021-03-01 20:40:19Z | 0.0025 BTC Withdrawal Fee | |
| 40 | 2021-03-03 21:53:20Z | 0.024 BTC | bc1qdjkc4e3u8jup6axtda560z 720vapq5p34pmwgu |
| 41 | 2021-03-03 21:53:20Z | 0.0025 BTC Withdrawal Fee | |
| 42 | 2021-03-03 22:54:50Z | 8 ETH | 0xC51f0cbf92030F50829B244 f8D876d5843b8A955 |

A. Almost every withdrawal from the Plaintiff's BlockFi account was assessed a withdrawal fee. *See* Mot. at ¶ 50.

B. Based on a report from the cryptographic tracing firm Coinfirm, *see* Plaintiff's Supplemental Declaration, Ex. A [ECF No. 13] at 2, the Plaintiff has identified electronic wallet addresses associated with the Plaintiff's stolen funds. From the JOHN DOE Wallet Addresses, many

of the stolen assets were then transferred to other wallets/accounts maintained by or for JOHN DOE (collectively, the "JOHN DOE Secondary Addresses"):

| # | Recipient Cryptocurrency Exchange | Destination Address | Asset and Tracing Amount |
|---|---|---|---|
| 1 | | bc1qfwxkmzln5g3g0n8vw5dqsv4vtxumh5xscyzr9l | 4.777099848 BTC |
| 2 | | bc1qkjhlymppxz4g4h6xle8u6scd8d6tm8s657zqqy | 3.401842272 BTC |
| 3 | Xapo.com | 19JyAkHKh36sFduqK4hMsMZhU6ZDoLotW | 2.33906575 BTC |
| 4 | | 13jWBgfYQRs1pPwsWhk9jtvjfDMgdByknP | 2.20246077 BTC |
| 5 | | bc1qe8esnkcwyvnnfe5f3ksfmj9eyktq9u0635lhuv | 1.478941262 BTC |
| 6 | | 327uTRES6ThXupKUAt1Xuk2pD9BiZaZ4wT | 1.10657357 BTC |
| 7 | BitPay | 15oRB2myPpq8h1jTdRDKE58WXPpSYgK6Qr | 1.105248136 BTC |
| 8 | Poloniex | 12vZ3fU66g4XTeomUYCEPp9rcsWjexgzR7 | 0.497294128 BTC |
| 9 | Binance | 15cxBdcNYsdkTW6JoM3Q4xshRF6x8vYrEc | 0.41288896 BTC |
| 10 | Coinbase | 3LF1XGESznTATC7dMQ2zWmZdf4WEJCcehj | 0.3 BTC |
| 11 | Gemini | bc1qss5ejcqfrmjm9lfydshanhjkc7wnlhk4khlsj8 | 0.250298812 BTC |
| | | | |
| 12 | Binance | e86433d2068bd319a54128117849b511f3e0ed42 | 1091.1566815047 ETH |
| 13 | Coincheck | 24ba1542f8a0a20e8251d096213384cfb0ee3dbc | 6.322870267 ETH |
| 14 | | 0c32245e86764a61de9feaad1315ac7ceaac70b2 | 0.0135378573 ETH |
| 15 | | 85dbca0a9bfee831f266065b6142f9ed3b5b1dd7 | 7.9214341878 ETH |
| 16 | | a1b78d4c51c50f30c936c3f941c2e206b71b3983 | 0.0005026098 ETH |
| 17 | | f7dddfbdb3ea8e0cadf101f37fe08695a955e25c | 0.0180210793 ETH |
| 18 | Binance | bfaa724c8fc49e490947e4c7c8d597b6336b67ac | 0.621182859 ETH |
| 19 | | 2fbbfe6e64d55168cf1ccfc993e61f2c4aa1ef06 | 0.0239687943 ETH |
| 20 | | 9b5b25216601f065aacbe8e641fa897163a69c2b | 1.6162668327 ETH |
| 21 | | 6da237bb6942e5d807a5ac55e7d17e487688d5ee | 0.0329650529 ETH |
| 22 | | 31385d3520bced94f77aae104b406994d8f2168c | 0.0100385744 ETH |
| **TOTALS** | | | **17.87171351 BTC** |
| | | | **1107.73746962 ETH** |

C.      The cryptocurrency assets at issue are specific, identifiable property and can be traced in JOHN DOE's assets in either the JOHN DOE Wallet Addresses or the JOHN DOE Secondary Addresses.

## LEGAL STANDARD

In order to obtain a temporary restraining order, a party must demonstrate "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case). Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and] (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.,* 415 U.S. 423, 439 (1974).

## CONCLUSIONS OF LAW

The declaration the Plaintiff has submitted in support of its *Ex Parte* Application for Temporary Restraining Order supports the following conclusions of law:

A.      Plaintiff has shown a substantial likelihood of success on the merits of her claims against the Defendant JOHN DOE for: (1) conversion; (2) replevin; (3) violations of the Computer Fraud and Abuse Act ("CFAA") under 18 U.S.C. § 1030(a)(2)(C), 1030(a)(4), and 1030(a)(5)(C); and (4) unjust enrichment as well as for imposition of a constructive trust and disgorgement of funds held by JOHN DOE in either the JOHN DOE Wallet Addresses or any JOHN DOE Secondary Addresses (defined below) to which JOHN DOE transferred any portion of the funds stolen from Plaintiff.

B.      Because of the speed and potential anonymity of cryptocurrency transactions, the Plaintiff is likely to suffer immediate and irreparable injury if a temporary restraining order is not granted.

C.      Moreover, considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, Plaintiff has good reason to believe the Defendant will hide or transfer his ill-gotten gains beyond the jurisdiction of this Court unless those assets are restrained.

D.      Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) (citing *Federal Trade Commission v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

E.      The Plaintiff was victimized by the theft of her cryptocurrency assets, and it appears from the record that JOHN DOE has no right to claim either possession or ownership of the Plaintiff's stolen assets. Therefore, there is a high likelihood Plaintiff will succeed on her claims.

F.      The balance of hardships also favors Plaintiff, because a Temporary Restraining Order would preserve the *status quo ante* and prevent irreparable harm until such time as the Court may hold a hearing.

G.      Entry of a Temporary Restraining Order will not harm the public interest, which is properly served by promoting the objectives of the Financial Crimes Enforcement Network [FinCEN]

(a division of the U.S. Department of the Treasury) and providing assurance that courts will protect investors' assets from theft and will aid investors in their recovery of stolen assets when they can be readily located and traced to specific locations, like the purloined assets in this action.

Having reviewed the Plaintiff's Complaint, Renewed Motion for *Ex Parte* Temporary Restraining Order, and supporting evidentiary submissions, the Court hereby

**ORDERS and ADJUDGES** that the Plaintiff's Renewed Motion for *Ex Parte* Temporary Restraining Order [ECF No. 7] against Defendant JOHN DOE is **GRANTED**, according to the terms set forth below.

### TEMPORARY RESTRAINING ORDER

1. Defendant JOHN DOE and his agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which he/they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby temporarily restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of Defendant JOHN DOE or any business entity through which he acts or which acts in active concert or participation with him; including but not limited to those assets currently held in: (1) the JOHN DOE Wallet Addresses and any JOHN DOE Secondary Addresses, (2) any account at any other financial institution, bank, trading exchange, or investment firm; and (3) any cryptocurrency wallet or cryptocurrency trading account they maintain or control anywhere other than in either the JOHN DOE Wallet Addresses and any JOHN DOE Secondary Addresses.

### NOTICE NOT PROVIDED TO PRESENTLY-UNIDENTIFIED DEFENDANT

2. Notice was not provided to Defendant JOHN DOE prior to entry of this Order because his identity is presently unknown to Plaintiff. By separate Order, the Court is simultaneously

herewith granting the Plaintiff's request to engage in expedited discovery through which Plaintiff intends to obtain from the Recipient Cryptocurrency Exchanges listed above Defendant JOHN DOE's identity, including a physical and/or electronic address at which Defendant JOHN DOE can be contacted about the claims asserted against him in this lawsuit.

## BOND TO BE POSTED

3.      Fed. R. Civ. P. 65(c) requires that the Plaintiff must typically post security. The Plaintiff shall post a bond in the amount of **One Thousand Eight Hundred Dollars and Zero Cents ($1,800)**, as payment of damages to which the Defendant may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice. In lieu of a bond, the Plaintiff may post cash or its equivalent with the Clerk of Court.

## PRELIMINARY INJUNCTION HEARING

4.      A **videoconference hearing** is set before this Court on **May 6, 2021 at 2:00 p.m.** via Zoom videoconference, at which time the Defendant and/or any other affected person may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on the Plaintiff's requested preliminary injunction. The Meeting ID is 161 2752 2255. The password is 7777.

5.      Any response or opposition to the Plaintiff's Motion for Preliminary Injunction must be filed and served on Plaintiff's counsel by **April 30, 2021**. Plaintiff shall file any Reply Memorandum on or before **May 3, 2021**. The above dates may be revised upon stipulation by all parties and approval of this Court. The Defendant is hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them under Fed. R. Civ. P. 65 and this Court's inherent authority.

## DURATION OF TEMPORARY RESTRAINING ORDER

6.     The Temporary Restraining Order will expire fourteen (14) days from its entry in accordance with Fed. R. Civ. P. 65(b)(2) unless, for good cause shown, this Order is extended or Defendant JOHN DOE consents that it should be extended for a longer period of time. The Court may, on demonstration of good cause by any party-of-interest, shorten or lift this Order.

## SERVICE OF THIS ORDER AND RELATED FILINGS

7.     As soon as is practical upon learning from the Recipient Cryptocurrency Exchanges Defendant JOHN DOE's true identity and obtaining his contact information, Plaintiff shall forthwith serve a copy of the Complaint, Motion, and this Order on the Defendant JOHN DOE and any person or entity that may have possession or control of any property, property right, funds, or asset that may be subject to any provision of this Order.

        **DONE AND ORDERED** in Fort Lauderdale, Florida, this 22nd day of April 2021.

_____

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| TITUS WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:21-03074-CV-RK |
| | ) | |
| JOHN DOE,  COINBASE GLOBAL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**TEMPORARY RESTRAINING ORDER**

This matter is before the Court on Plaintiff's Emergency Motion for Temporary Restraining Order Without Notice against Defendant JOHN DOE (the "Motion"). (Doc. 2.) Under Federal Rule of Civil Procedure 65, a Court may grant a Temporary Restraining Order *ex parte*. As required by the Rule, specific facts in the form of an affidavit or Verified Complaint must demonstrate an "immediate and irreparable injury, loss, or damage will result to movant before the adverse party can be heard in opposition," and the attorney for the movant must certify in writing any efforts made to provide notice to the adverse party. *See*, Fed.R.Civ.P. 65(b)(1).  Any Order issued without notice to the adverse party must state "the date and hour it was issued; describe the injury and state why it is irreparable; state why the Order was issued without notice and be promptly filed in the Clerk's Office and entered in the record.  The Order expires at a time after entry -- not to exceed fourteen (14) days." *Id*. at (b)(2).

In evaluating the Motion, this Court has considered the following factors: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant; (3) the state of the balance between this harm and the injury that granting the injunction will inflict upon other parties litigant; and (4) the public interest.  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc); *see also S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989).

In so ruling, the Court rejects Defendant COINBASE Global, Inc.'s arguments that it cannot be ordered to produce the identity of JOHN DOE based on the contention that the proper COINBASE defendant is COINBASE Europe because COINBASE Global is a corporate holding company for the COINBASE affiliates.  In the context of a parent/subsidiary relationship, "control" is determined by considering three elements:  (1) the corporate structures of the party to

whom the discovery is directed and the non-party in physical possession of the requested documents, (2) the non-party's connection to the subject matter of the litigation, and (3) whether the non-party will feel the benefits or burdens of any award in the case. *Orthoarm, Inc. v. Forestadent USA, Inc.*, No. 4:06-CV-730 CAS, 2007 WL 1796214, at *2 (E.D. Mo. June 19, 2007). A court may order a non-party parent corporation in a foreign country to produce documents physically held abroad. *Id.* (citations omitted).

Here, the documents of COINBASE Europe are within the possession, custody, and control of COINBASE Global for several related reasons. First, the public S-1 (Doc. 14-1) supports the finding that that the two entities have overlapping corporate structures.[1] Second, COINBASE Global does not appear to meaningfully dispute that it shares the same platform as all of the COINBASE entities, including COINBASE Europe. Even assuming that fact was in dispute, COINBASE Global was able to quickly secure an agreement from COINBASE Europe that the documents would not be released for a minimum of days (first ten days, and later twenty). "The party to whom the discovery is directed need not have legal ownership or actual physical possession, but rather a 'practical ability' to obtain the documents." *Wells v. FedEx Ground Package Sys., Inc.*, No. 4:10-CV-02080-JAR, 2012 WL 4513860, at *1 (E.D. Mo. Oct. 1, 2012). *See also Republic Tech. (NA), LLC v. BBK Tobacco & Foods, LLP*, No. 16 C 3401, 2017 WL 4287205, at * 3 (N.D. Ill. Sept. 27, 2017) (noting the parent company offered to "work with" the subsidiary to obtain information); *Hiser v. Volkswagon Group of Am., Inc.*, No. 5:14-CV-170-TBR-LLK, 2016 WL 11409339, at *7 (W.D. Ken. Aug. 1, 2016) (noting multiple reasons why parent company VWAG exerts sufficient control over Audi to obtain responsive documents and

---

[1] For example, the S-1 filing states in part under "Nature of Operations" (Doc. 14-1 at 264):

Coinbase, Inc. was founded in 2012. In April 2014, in connection with a corporate reorganization, Coinbase, Inc. became a wholly-owned subsidiary of Coinbase Global, Inc. (together with its consolidated subsidiaries, the "Company").

The Company operates globally and is a leading provider of end-to-end financial infrastructure and technology for the cryptoeconomy. The Company offers retail users the primary financial account for the cryptoeconomy, institutions a state of the art marketplace with a deep pool of liquidity for transacting in crypto assets, and ecosystem partners technology and services that enable them to build crypto-based applications and securely accept crypto assets as payment.

In May 2020, the Company became a remote-first company. Accordingly, the Company does not maintain a headquarters.

other information, including that VWAG owns Audi's stock and that VWAG includes Audi's sales revenue in its annual sales revenue reporting).

The Court additionally has determined Plaintiff is not required to apply for "Letter of Request and/or Letters Rogatory."  *See Societé Nationale Industrielle Aéropostale v. U. S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 539 (1987) (holding that "Hague Convention did not deprive the District Court of the jurisdiction it otherwise possessed to order a foreign national party before it to produce evidence located within a signatory nation.").  *Aéropostale* set forth five factors to consider in order to warrant production of relevant documents:  (1) the importance to the litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.  *Id*. at n.28 (citation omitted).

Here, first, the documents and information to be produced are business records relevant to the claims and defenses in this case and thus meet the standard for discovery under Fed.R.Civ.Pro. 26.  Second, the document requests are designed to obtain only documents and data relevant to the litigation. The third factor, whether the information originated in the United States, is unknown at this time, but the complaint alleges the cause of action accrued within the jurisdiction of the Western District of Missouri.  Fourth, the Court is unaware of an effective alternative means of securing the information underpinning this claim, which arose in this jurisdiction through the alleged acts of Doe, whose alleged unlawfully held funds are located abroad.  Fifth, preventing production would substantially hinder and undermine the vital interest of the United States in the ordinary operation of its civil justice system, which depends on the ability of each party to obtain documents and data in the manner in which it is kept in the ordinary course of business.

Having reviewed the Motion, the file, and being otherwise sufficiently advised in the premises, the Court hereby finds as follows:

1.       Plaintiff has shown a strong likelihood of success on the merits of his claims against Defendant JOHN DOE for conversion as well as for imposition of a constructive trust and disgorgement of funds held in an account(s) maintained by, or for, Defendant JOHN DOE at COINBASE, Global, Inc., a Delaware-based cryptocurrency exchange (hereafter "COINBASE").

2.      Specifically, on February 26, 2021, 33.7398 bitcoin were stolen from an account maintained in Plaintiff's individual name at Blockchain.com, a cryptocurrency wallet and exchange used by thousands of consumers to invest and store cryptocurrency.

3.      As concluded by a cryptographic tracing firm, at least 2.895032 BTC of the 33.7398 BTC transferred from Plaintiff's Blockchain.com account were transferred in two separate, but related, transactions to a single deposit address at COINBASE (the "COINBASE Address"), *to wit*:

| # | Coinbase Address | Transaction Hash | Transfer Date (UTC) | Amount sent to address (BTC) |
|---|---|---|---|---|
| 1 | 3Q4We7jETMLr3hVJj7 UghJYdAxBFY7JxYZ | 9853e7933502e01390cbe4cedd3 0c04cf56fb7457de41a06c0f5256 e4e39181b | 2021-02-26 04:27:11 | 0.02009225 |
| 2 | 3Q4We7jETMLr3hVJj7 UghJYdAxBFY7JxYZ | f452cdf6eb8cd9ff77c32f349f688 b0ea9a16d4f5a2e4b82758f9fe32 f44e480 | 2021-02-26 04:31:45 | 2.87493958 |
| | | | **TOTAL** | **2.895032 BTC** |

4.      COINBASE has represented that JOHN DOE is the owner of the account tied to the COINBASE Address, though -- in accordance with, *inter alia*, its Privacy Policy, COINBASE has represented that it is obligated to protect JOHN DOE's identity unless ordered to reveal his identity or other personal information by a court of competent jurisdiction or by a quasi-judicial body -- COINBASE has not revealed JOHN DOE's actual name or any address at which he can be located or contacted.

5.      In addition to the foregoing, the cryptographic tracing firm has identified numerous private cryptocurrency wallets to which the bitcoin stolen from Plaintiff was sent.

6.      The cryptocurrency assets at issue are specific, identifiable property and can be traced to the assets stolen from Plaintiff.

7.      Plaintiff has established that his rights will be immediately and irreparably harmed absent a Temporary Restraining Order inasmuch as a Court Order can best secure the funds in question. Without entry of the Temporary Restraining Order, Plaintiff may be unable to recover for his equitable claims.

8.      Moreover, considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze JOHN DOE's assets at COINBASE and the private cryptocurrency wallets to maintain the *status quo* to avoid dissipation of the money illegally taken from Plaintiff.

9.      Plaintiff was victimized by the theft of his cryptocurrency assets, and it appears from the record that JOHN DOE has no right to claim either possession or ownership of Plaintiff's stolen assets.  Therefore, there is a high likelihood Plaintiff will succeed on his claims.

10.      The balance of hardships also favors Plaintiff, because a Temporary Restraining Order would preserve the *status quo ante* and prevent irreparable harm until such time as the Court may hold a hearing.

11.      Entry of a Temporary Restraining Order will not harm the public interest, which is properly served by promoting the objectives of the Financial Crimes Enforcement Network [FinCEN] (a division of the U.S. Department of the Treasury) and providing assurance that courts will protect investors' assets from theft and will aid investors in their recovery of stolen assets when they can be readily located and traced to specific locations, like the purloined assets in this action.

12.      Because of the apparent strength of Plaintiff's case, the Court concludes that requiring security pursuant to Fed.R.Civ.P. 65(c) is not appropriate in this case at this time.

Accordingly, IT IS HEREBY ORDERED AND ADJUDGED that:

### TEMPORARY RESTRAINING ORDER

1.      Plaintiff's Motion for Temporary Restraining Order against Defendant JOHN DOE is GRANTED.

2.      Defendant JOHN DOE and his agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which he/they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby temporarily restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of Defendant JOHN DOE or any business entity through which he acts or which acts in active concert or participation with him; including but not limited to those assets currently held in: (1) any account at COINBASE, (2) any account at any other financial institution, bank, trading exchange, or investment firm; and (3) any

cryptocurrency wallet or cryptocurrency trading account they maintain or control anywhere other than at COINBASE.

      3.     COINBASE has represented to the Court that COINBASE and/or its subsidiary Coinbase Europe, Ltd. will provide Plaintiff twenty (20) days' written notice prior to any intended lifting of the injunction of any account(s) at COINBASE or Coinbase Europe, Ltd. maintained by, for, or on behalf of, Defendant JOHN DOE or any business entity through which he acts or which acts in active concert or participation with him.

      4.     The Court further orders that the following private cryptocurrency wallets which, as of the date of this Order, are believed to be storing bitcoin stolen from Plaintiff, are likewise temporarily restrained from withdrawing, transferring, or encumbering any assets held in those wallets:

| # | Wallet | Amount of Bitcoin Stored in Wallet |
|---|--------|------------------------------------|
| 1 | 3B7f8RpU4JYTGg7Nfzj2Za9rW6BSFMPgDc | 18.36248574 |
| 2 | 32ShuMM9WonbeLQZEbqNQvGt1BQtMEbE3W | 4.95212572 |
| 3 | 1PM9vfQoVgTMEfGjVJykrnTyEJUk6rZw3g | 3.18083050 |
| 4 | 1HeEUM3ZPp62twAThkwVhU8JqK8hjCCykL | 2.22350140 |
| 5 | 1GHUstbeDCZs3LheqSwqb9KGCbYhQmk3V7 | 0.78288052 |
| 6 | 1Hct4e23YXtCsQnzCCAbpmFFYrk3N4UbGk | 0.53792282 |
| 7 | 1JAa4PMU9XWepeCBi3SFGnPtXYQEWbLsBT | 0.20922858 |
| 8 | 1Hyjhm7f5uKDjafr9BHFh1cAvUzb2NX2ey | 0.08181208 |
| 9 | 1B5yVWxuPcSq4ah2ycxQRQFJdyEcZ4cwUJ | 0.02011707 |
| | TOTAL | 30.78370898 BTC |

<u>N</u>OTICE <u>N</u>OT <u>P</u>ROVIDED TO <u>P</u>RESENTLY-<u>U</u>NIDENTIFIED <u>D</u>EFENDANT

      5.     Notice was not provided to Defendant JOHN DOE prior to entry of this Order because his identity is presently unknown to Plaintiff. By separate Order, the Court is simultaneously herewith granting Plaintiff's request to engage in expedited discovery through which Plaintiff intends to obtain from COINBASE or Coinbase Europe, Ltd. Defendant JOHN DOE's identity, including his name and a physical and/or electronic address at which Defendant JOHN DOE can be contacted about the claims asserted against him in this lawsuit.

## BOND TO BE POSTED

6.      Pursuant to Fed.R.Civ.P. 65(c), requiring that security must typically be posted by Plaintiff, the Court has determined that $100 would be more than adequate to pay the costs and damages, if any, sustained by any party found to have been wrongfully enjoined or restrained, and therefore, pursuant to Fed.R.Civ.P. 65, within ten days from the date of this Order, Plaintiff shall post a bond in the amount of $100 to secure this Order.  In lieu of a bond, Plaintiff may post cash or its equivalent with the Clerk of Court.

7.      Upon a showing of good cause by any party-of-interest, the Court may enter a further order amending the amount of Plaintiff's bond requirement as means of providing a source of funds to which Defendant JOHN DOE may be entitled for a wrongful injunction or restraint.

## PRELIMINARY INJUNCTION HEARING

8.      Pursuant to Fed.R.Civ.P. 65(b), Defendant JOHN DOE shall appear on April 15, 2021 at 9 a.m. CST, before United States District Judge Roseann A. Ketchmark at the Charles Evans Whittaker U.S. Courthouse, 400 E. 9th Street - Courtroom 8E, Kansas City, MO 64106, for an evidentiary hearing at which Defendant JOHN DOE may show good cause why this Court should not enter a preliminary injunction, enjoining the violations of law alleged in Plaintiff's Complaint and imposing such additional relief as the Court deems just and proper, pending final ruling on the claims asserted against Defendant JOHN DOE.

9.      Defendant JOHN DOE shall file with the Court and serve on Plaintiff's counsel any answering affidavits, pleadings, motions, expert reports or declarations and/or legal memoranda no later than five (5) days prior to the hearing for preliminary injunction.

10.     If Defendant JOHN DOE timely files with the Court any papers opposing entry of a preliminary injunction, Plaintiff may file with the Court responsive or supplemental pleadings, materials, affidavits, or memoranda and serve same on Defendant JOHN DOE shall or his counsel-of-record no later than two (2) days prior to the preliminary injunction hearing.

11.     Defendant JOHN DOE is hereby on notice that failure to timely serve and file his opposition, or failure to appear at the hearing, may result in the imposition of a preliminary injunction against him pursuant to Fed.R.Civ.P. 65.

## DURATION OF TEMPORARY RESTRAINING ORDER

12.     The Temporary Restraining Order will expire fourteen (14) days from its entry in accordance with Fed.R.Civ.P. 65(b)(2) unless, for good cause shown, this Order is extended or

Defendant JOHN DOE consents that it should be extended for a longer period of time.  However, the Court may, upon demonstration of good cause by any party-of-interest, shorten or lift this Order.

### SERVICE OF THIS ORDER AND RELATED FILINGS

13.     COINBASE and/or its relevant subsidiary shall forthwith serve upon Defendant JOHN DOE a copy of the Complaint, Motion, and this Order by First Class Mail, overnight delivery, facsimile, electronic mail, or personally by agents or employees of theirs, or by private process server; and shall -- within three (3) business days of such service -- file with the Court proof of service of same.

14.     Additionally, Plaintiff -- as soon as is practical upon learning his/her true identity and obtaining his/her contact information -- shall forthwith serve a copy of the Complaint, Motion, and this Order by First Class Mail, overnight delivery, facsimile, electronic mail, or personally by agents or employees of Plaintiff or by private process server, upon any person other than JOHN DOE or entity that may have possession or control of any property, property right, funds, or asset that may be subject to any provision of this Order.  These impacted parties-in-interest would include any owner(s) of the private wallet address(es) listed above.

15.     The above dates may be revised upon stipulation by all parties and approval of this Court.

**IT IS SO ORDERED** this 1st day of April 2021 at 11:35 a.m. CST.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED:  April 1, 2021