# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| MARCO OHLIN and NATASHA PARACHA, <br><br> Plaintiffs, <br><br> v. <br><br><br> DEFENDANT "1" a/k/a "SELINA" and JOHN DOES 1-20, as yet unidentified Individuals, Business Entities and/or Unincorporated Associations, <br><br> Defendants. | CASE NO. 3:23 cv-08856 |

### [PROPOSED] ORDER GRANTING PLAINTIFFS' <br> *EX PARTE* EMERGENCY MOTION FOR <br> <u>TEMPORARY RESTRAINING ORDER</u>

**THIS CAUSE** comes before the Court on Plaintiffs' Emergency Motion for Temporary Restraining Order Without Notice against Defendant "1" a/k/a "SELINA" and JOHN DOES 1-20 [ECF No. 3] ("Motion"). As explained below, after careful review of the Motion and Plaintiffs' supporting declarations [ECF No. 4-1 and 4-2], Plaintiffs have satisfied the requirements for the issuance of a temporary restraining order.

### BACKGROUND

Under Defendant "1" a/k/a "SELINA'S" guidance, Plaintiff MARCO OHLIN

downloaded what he believed was a smartphone application owned and operated by a legitimate exchange called Members Exchange (MEMX). Instead, however, Defendant "1" helped Plaintiff MARCO OHLIN download an application that Defendants created which was a copycat of the real MEMX smartphone application. Thus, according to Plaintiff MARCO OHLIN, he believed he was provided with the legitimate cryptocurrency smart phone application that was owned and operated by Members Exchange – a legitimate U.S. exchange.

At the direction of Defendant "1", Plaintiff MARCO OHLIN began transferring cryptocurrency he held on his Coinbase account to what he believed was the legitimate MEMX exchange.  The cloned copycat smartphone application was fraudulent and served as an engine of theft for Defendants, giving them a mechanism to provide Plaintiffs with false account statements that masked the fraudulent scheme Defendants were perpetrating. In essence, the "MEMX" to which Plaintiffs were sending their cryptocurrency holdings was actually -- unbeknownst to Plaintiffs – Defendants' own private cryptocurrency wallet addresses

Through blockchain analytics tracing the path of Plaintiffs' cryptocurrency assets, it has become apparent that Defendants have stolen all of Plaintiffs' assets; and those assets have been transferred to cryptocurrency accounts under Defendants' sole control.

For example, Plaintiffs' stolen assets have been traced to the following

cryptocurrency wallet addresses at cryptocurrency exchanges BINANCE, OKX (OKEx) and GEMINI — wallet addresses which are believed to be owned or controlled by Defendants and which were used to launder the assets stolen from Plaintiffs:

| # | EXCHANGE | DESTINATION ADDRESS | ASSET TYPE | ASSETS UNDER CLAIM (confirmed amount with blockchain data analysis, in cryptocurrency unit) |
|---|---|---|---|---|
| 1. | Binance | 1KAr47ZWdEmkLTPDjieF2mqHF7aJUoLEVD | BTC | 18.06583687 |
| | | | TOTAL BTC | 18.06583687 |
| 2. | Binance | 0x5a44717f1A7EDe7Ff3C5C6668B7d6cd84323634E | ETH | 19.110906 |
| 3. | Gemini | 0xD620c2Db204247c3C4db370999C90d7b1E5023A2 | ETH | 0.098604 |
| | | | TOTAL ETH | 19.20951 |
| 4. | OKX | 0xcA9B4a51C2ee3F65432f41ea71B6C693551B38F4 | USDT | 210000 |
| 5 | OKX | 0x1ce6880Ae94db5FBb5772EdA73A29c101F4D7D0d | USDT | 165025 |
| 6. | OKX | 0xE62462b570A34Cc19C59005289D193fb2fB6E3EA | USDT | 24139 |
| | | | TOTAL USDT | 399,164 |

In addition to the foregoing, as of the date of this filing, blockchain analytics have traced Plaintiffs' stolen funds to and/or through the following cryptocurrency wallet addresses, which are believed to be owned or controlled by Defendants and

which are believed to still be holding at least some of the assets stolen from Plaintiffs:

| # | DESTINATION ADDRESS | ASSET TYPE | ASSETS UNDER CLAIM (confirmed amount with blockchain data analysis, in cryptocurrency unit) |
|---|---|---|---|
| 1 | 0x389505f098a29a994A3ed0e674f07cd451dde42C | ETH | 0.735681 |
| 2 | 0x000F422887eA7d370FF31173FD3B46c8F66A5B1c | ETH | 0.43432389 |
|  |  | **TOTAL ETH** | **1.17000489** |

As a result of the foregoing scheme, Plaintiffs have lost approximately Eight Hundred Sixty-Two Thousand Three Hundred Eighteen Dollars and Seventy-Three Cents ($862,318.73) and are left trying to get answers to help them uncover where his funds are or where they went after they were stolen by Defendants.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 65, a Court may grant a temporary restraining order *ex parte*. As required by the Rule, specific facts in the form of an affidavit or Verified Complaint must demonstrate an "immediate and irreparable injury, loss, or damage will result to movant before the adverse party can be heard in opposition," and the attorney for the movant must certify in writing any efforts made to provide notice to the adverse party. *See* Fed. R. Civ. P. 65(b)(1). Any Order issued without notice to the adverse party must state "the date and hour it was issued; describe the injury and state why it is irreparable; state why the Order was issued without notice and be promptly filed in the Clerk's Office and entered in the record.

The Order expires at a time after entry — not to exceed fourteen (14) days." *Id*. at (b)(2).

To obtain a temporary restraining order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non- movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974).

## ANALYSIS

Plaintiffs have shown a strong likelihood of success on the merits of their claims against Defendant "1" and JOHN DOES 1-20 for: (1) conversion and (2) unjust enrichment as well as for imposition of a constructive trust and disgorgement of funds held by Defendants in the aforementioned Destination Addresses to which Defendants transferred any portion of the funds purportedly stolen from Plaintiffs. Specifically, in light of the foregoing facts, Plaintiffs are entitled to a temporary restraining order freezing Defendants assets — including the Destination Addresses

maintained by Defendant "1" and her accomplices JOHN DOES 1-20 or by any entity under their control — to preserve the *status quo ante* pending the outcome of this litigation.

The cryptocurrency assets at issue are specific, identifiable property and can be traced in Defendants' assets in the Destination Addresses or elsewhere. Plaintiffs have established in their Motion and the Declarations in support thereof that Plaintiffs' rights will be immediately and irreparably harmed absent a temporary restraining order from this Court. Without entry of the temporary restraining order, Plaintiffs may be unable to recover for their equitable claims.

Moreover, considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze the Destination Addresses to maintain the *status quo* to avoid dissipation of the money illegally taken from Plaintiffs. Plaintiffs were victimized by the theft of their cryptocurrency assets, and it appears from the record that Defendant "1" and/or JOHN DOES 1-20 have no right to claim either possession or ownership of Plaintiffs' stolen assets. Therefore, there is a high likelihood Plaintiffs will succeed on their claims.

The balance of hardships also favors Plaintiffs because a temporary restraining order would preserve the *status quo ante* and prevent irreparable harm until such time as the Court may hold a hearing. Entry of a temporary restraining order will also not harm the public interest, which is properly served by promoting the

objectives of the Financial Crimes Enforcement Network [FinCEN] (a division of the U.S. Department of the Treasury) and providing assurance that courts will protect investors' assets from theft and will aid investors in their recovery of stolen assets when they can be readily located and traced to specific locations, like the stolen assets in this action.

Lastly, because of the apparent strength of Plaintiffs' case, the Court concludes that Plaintiffs need only provide a modest amount of security pursuant to Fed. R. Civ. P. 65(c) at this time.

## **CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Plaintiffs' Motion [ECF No. 4] is **GRANTED**. A temporary restraining order is entered as follows:

1.   Defendants and their agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which she/they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby temporarily restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of Defendants or any business entity through which she/they act or which act in active concert or participation with them;

including but not limited to those assets currently held in: (1) the Destination Addresses; (2) any account at any other financial institution, bank, trading exchange, or investment firm; and (3) any cryptocurrency wallet or cryptocurrency trading account they maintain or control anywhere other than in the Destination Addresses.

2. Notice was not provided to Defendant "1" or JOHN DOES 1-20 prior to entry of this Order because her/their identities are presently unknown to Plaintiffs.

3. Pursuant to Fed. R. Civ. P. 65(c), which requires that security must typically be posted by Plaintiffs, the Court has determined that One Hundred Dollars ($100.00) is adequate to pay the costs and damages, if any, sustained by any party found to have been wrongfully enjoined or restrained by this Order. Therefore, pursuant to Fed. R. Civ. P. 65, Plaintiffs shall — within ten (10) calendar days of this Order — post a bond in the amount of One Hundred Dollars ($100.00) to secure this Order. In lieu of a bond, Plaintiffs may post cash or its equivalent with the Clerk of Court.

4. Upon a showing of good cause by any party-of-interest, the Court may enter a further order amending the amount of Plaintiffs' bond requirement as a means of providing a source of funds to which Defendants may be entitled for a wrongful injunction or restraint.

5. This Temporary Restraining Order will expire fourteen (14) days from its entry in accordance with Fed. R. Civ. P. 65(b)(2) unless, for good cause shown,

this Order is extended or Defendant "1" or JOHN DOES 1-20 consent that it should be extended for a longer period of time. However, the Court may, upon demonstration of good cause by any party-of-interest, shorten or lift this Order.

**DONE AND ORDERED** in Pensacola, Florida, this _____ day of May, 2023.

_____
**T. KENT WETHERELL, II
UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of Record