UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**MARCO OHLIN and NATASHA PARACHA**,

    **Plaintiffs**,

v.                                            Case No. 3:23cv8856-TKW-HTC

**DEFENDANT 1** a/k/a SELINA, **et al.**,

    **Defendants**.

_____/

## TEMPORARY RESTRAINING ORDER

On April 26, 2023, Plaintiffs filed a complaint against 21 yet unidentified Defendants for (1) conversion, (2) unjust enrichment, (3) imposition of a constructive trust and disgorgement, (4) and conspiracy related to cryptocurrency fraud. Plaintiffs amended their complaint on May 18, 2023, and this morning, Plaintiffs filed an *ex parte* emergency motion for a temporary restraining order (TRO) to freeze assets in certain cryptocurrency "wallets." Plaintiffs claim that they have identified the particular cryptocurrency wallets where Defendants have secreted Plaintiffs' stolen assets, and they ask the Court to issue an order preventing Defendants from moving or transferring those assets from the identified wallets. Upon due consideration of Plaintiffs' *ex parte* emergency motion (Doc. 5) and the attachments thereto, as well as the first amended complaint (Doc. 3), the Court finds

that Plaintiffs have met the requirements for issuance of an *ex parte* TRO.

## Background

Plaintiffs claim that "Defendant 1," who they also refer to as "Selina," deceived them into transferring approximately $862,318.73 worth of various cryptocurrencies into accounts that Defendant 1 misrepresented to be legitimate accounts established for Plaintiffs' benefit but in actuality were Defendants' own privately controlled accounts. Once Plaintiffs transferred their cryptocurrency assets into these fraudulent accounts, Defendants allegedly converted them for their own benefit.

Plaintiffs do not know the true identity of Defendant 1 or her alleged co-conspirators, but Plaintiffs believe Defendant 1 to be "of Chinese descent" and currently "located in China" based on IP address information.

Through blockchain analytics tracing, Plaintiffs have identified the following cryptocurrency wallet addresses at cryptocurrency exchanges BINANCE, OKX (OKEx) and GEMINI—wallet addresses which are believed to be owned or controlled by Defendants—that were used to launder the assets stolen from Plaintiffs:

| # | EXCHANGE | DESTINATION ADDRESS | ASSET TYPE | ASSETS UNDER CLAIM (confirmed amount with blockchain data analysis, in cryptocurrency unit) |
|---|---|---|---|---|
| 1. | Binance | 1KAr47ZWdEmkLTPDjieF2mqHF7aJUoLEVD | BTC | 18.06583687 |
|  |  | TOTAL BTC |  | **18.06583687** |
| 2. | Binance | 0x5a44717f1A7EDe7Ff3C5C6668B7d6cd84323634E | ETH | 19.110906 |
| 3. | Gemini | 0xD620c2Db204247c3C4db370999C90d7b1E5023A2 | ETH | 0.098604 |
|  |  | TOTAL ETH |  | **19.20951** |
| 4. | OKX | 0xcA9B4a51C2ee3F65432f41ea71B6C693551B38F4 | USDT | 210000 |
| 5 | OKX | 0x1ce6880Ae94db5FBb5772EdA73A29c101F4D7D0d | USDT | 165025 |
| 6. | OKX | 0xE62462b570A34Cc19C59005289D193fb2fB6E3EA | USDT | 24139 |
|  |  | TOTAL USDT |  | **399,164** |

In addition to the foregoing, as of the date of this filing, blockchain analytics have traced Plaintiffs' stolen funds to and/or through the following cryptocurrency wallet addresses, which are believed to be owned or controlled by Defendants and which are believed to still be holding at least some of the assets stolen from Plaintiffs:

| # | DESTINATION ADDRESS | ASSET TYPE | ASSETS UNDER CLAIM (confirmed amount with blockchain data analysis, in cryptocurrency unit) |
|---|---|---|---|
| 1 | 0x389505f098a29a994A3ed0e674f07cd451dde42C | ETH | 0.735681 |

3

| 2 | 0x000F422887eA7d370FF31173FD3B46c8F66A5B1c | ETH | 0.43432389 |
|---|---|---|---|
| | | **TOTAL ETH** | **1.17000489** |

Plaintiffs request that the Court freeze the assets contained in the cryptocurrency wallet addresses identified above (the "Destination Addresses"). Given that Defendants are currently unidentified, Plaintiffs have not served them with process, but propose to eventually do so through the use of a "Non-Fungible token" sent directly to the Destination Addresses.

## Analysis

The Court finds that it has the authority to issue a TRO freezing assets under the circumstances alleged and substantiated by Plaintiffs, and it finds that it has the authority to do so without first issuing notice to Defendants.

*First*, while a court cannot freeze a defendant's assets prior to trial in a case where only money damages are at issue, *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308 (1999), Plaintiffs have sought the equitable remedy of a constructive trust here. "Where equitable relief is sought … a district court can appropriately issue an asset freeze order to preserve funds for the equitable remedy, even where the request for equitable relief is coupled with requests for money damages." *Absolute Activist Value Master Fund Ltd. v. Devine*, 2016 WL 1572388, at *3 (M.D. Fla. Apr. 19, 2016) (internal citations omitted). Further, at least one other court in this circuit has issued a TRO in this exact circumstance—an asset

4

freeze of cryptocurrency wallets controlled by yet unidentified defendants. *See Astrove v. Doe*, 2022 WL 2805315 (S.D. Fla. April 21, 2022).

*Second*, Federal Rule of Civil Procedure 65(b)(1) allows a court to issue a TRO without notice to the defendant where the adverse party has alleged (1) "specific facts in an affidavit or a verified complaint clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." The Court finds that Plaintiffs have met these elements because: Plaintiffs' declarations show that the stolen assets could be transferred from the Destination Addresses (perhaps to unidentifiable and/or unretrievable locations) at any moment, making time of the essence; the thrust of Plaintiffs' complaint is that Defendants are attempting to conceal their assets, which gives the Court every reason to believe the Defendants would further hide those assets if they were given notice, *cf. ABG EPE IP, LLC v. 3C Smart Store*, 2021 WL 2452636, at *4 (N.D. Ga. Apr. 17, 2021) (ex parte TRO warranted to "avoid affording Defendants an opportunity to destroy relevant evidence, much of which is in electronic form"); and, finally, Plaintiffs have not yet identified Defendants and therefore could not be expected to give them notice.

Once the procedural requirements of Fed. R. Civ. P. 65(b)(1) are met, "[a]

5

TRO … is appropriate where the movant demonstrates that: (a) there is a substantial likelihood of success on the merits; (b) the TRO … is necessary to prevent irreparable injury; (c) the threatened injury outweighs the harm that the TRO … would cause to the non-movant; and (d) the TRO … would not be averse to the public interest." *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001) (quoting *Zardui-Quintana v. Richard*, 768 F.2d 1213, 1216 (11th Cir. 1985)). "[T]he first two factors … are the most critical," *Niken v. Holder*, 556 U.S. 418, 435 (2009); *see also Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005) ("The first of the four prerequisites to temporary injunctive relief is generally the most important.").

Here, Plaintiffs have shown a substantial likelihood of success on the merits of their claims against Defendants for conversion, unjust enrichment, and imposition of a constructive trust and disgorgement of funds held by Defendants in the Destination Addresses. Plaintiffs have alleged and provided evidence that Defendants acquired Plaintiffs' assets fraudulently and have no legitimate claim to them.

Plaintiffs have also shown that irreparable harm will ensue absent a TRO. Considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze the Destination Addresses to maintain the *status quo* to avoid dissipation of the money illegally taken

from Plaintiffs.

The threatened injury to Plaintiffs also outweighs any harm Defendants may suffer by virtue of the TRO. Maintaining the assets within the Destination Addresses is perhaps Plaintiff's only realistic chance at a future recovery in this case, and Defendants will suffer at worst a temporary inability to move assets that it appears they have no right to possess.

A TRO will not be adverse to the public interest because it will promote the rule of law and investor confidence in cryptocurrency transactions.

Lastly, because of the apparent strength of Plaintiffs' case, the Court concludes that Plaintiffs need only provide a modest amount of security pursuant to Fed. R. Civ. P. 65(c) at this time.

## Conclusion

For the foregoing reasons, it is hereby **ORDERED** that Plaintiffs' *ex parte* emergency motion for a temporary restraining order Doc. 5 is **GRANTED**. A temporary restraining order is entered as follows:

1. Defendants and their agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which she/they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby temporarily restrained from withdrawing, transferring, or encumbering any assets

currently held in the Destination Addresses.

2. Notice was not provided to Defendants prior to issuance of this Order for the reasons stated above.

3. Pursuant to Fed. R. Civ. P. 65(c), which requires that security must typically be posted by Plaintiffs, the Court has determined that One Hundred Dollars ($100.00) is adequate to pay the costs and damages, if any, sustained by any party found to have been wrongfully enjoined or restrained by this Order. Therefore, pursuant to Fed. R. Civ. P. 65, Plaintiffs shall — within seven (7) calendar days of this Order — post a cash bond in the amount of One Hundred Dollars ($100.00) to secure this Order.

4. Upon a showing of good cause by any party-of-interest, the Court may enter a further order amending the amount of Plaintiffs' bond requirement as a means of providing a source of funds to which Defendants may be entitled for a wrongful injunction or restraint.

5. This Temporary Restraining Order will expire fourteen (14) days from its entry in accordance with Fed. R. Civ. P. 65(b)(2) unless, for good cause shown, this Order is extended or Defendants consent that to its extension for a longer period of time. However, the Court may, upon demonstration of good cause by any party-of-interest, shorten or lift this Order.

6. A hearing to determine whether to convert this temporary restraining order into a preliminary injunction is set for Thursday, June 8, at 9:00 A.M. central time in Courtroom 4 North at the United States Courthouse, 1 North Palafox Street, Pensacola, Florida, 32502.

**DONE and ORDERED** this 26th day of May, 2023, at 2:00 P.M. central time.

_____
**T. KENT WETHERELL, II**
**UNITED STATES DISTRICT JUDGE**